IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

AUG 26 2015

CLERK, U.S. DISTRICT COURT
By _____
Deputy

KENNETH OLAF LUNDGREN,     §
    §
        Petitioner,     §
    §
v.     §     No. 4:14-CV-014-A
    §
WILLIAM STEPHENS, Director,     §
Texas Department of Criminal     §
Justice, Correctional     §
Institutions Division,     §
    §
        Respondent.     §

### MEMORANDUM OPINION
### and
### ORDER

This is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner, Kenneth Olaf Lundgren, a state prisoner confined in the Correctional Institutions Division of the Texas Department of Criminal Justice (TDCJ), against William Stephens, Director of TDCJ, respondent. After having considered the pleadings, state court records, and relief sought by petitioner, the Court has concluded that the petition should be denied.

## I. Factual and Procedural History

In January 2011 petitioner was charged by separate indictment in Hood County, Texas, Case No. CR11793, with six counts of aggravated assault with a deadly weapon on a public

servant for offenses occurring on October 31, 2010.  Clerk's R.,

16, ECF No. 14-6.  Petitioner's trial commenced on September 26,

2011.  The state appellate court summarized the factual and

procedural background of the case as follows:

> On the evening of October 31, 2010, appellant was
> at his home in Hood County with his wife and stepson.
> Appellant had taken several prescribed medications for
> back pain and was drinking alcohol.  At some point in
> the evening, appellant picked up a gun and began acting
> strangely.  Appellant's wife became concerned that he
> was going to hurt himself, so she had her son call the
> police.  Several uniformed Hood County Sheriff's
> deputies soon arrived and gathered at the gate to
> appellant's property.  Shortly after they arrived,
> appellant's wife and stepson came out of the home and
> reported that appellant was still inside.  Appellant's
> wife told police that she was concerned that appellant
> was going to come out of the house and come after her.
> The deputies set up a perimeter around the house and
> waited for a negotiator and SWAT team to arrive.
>
> Before the negotiator or SWAT team could arrive,
> appellant came out of the home and began walking toward
> the deputies at the front gate.  The deputies asked him
> to show his hands, and appellant made an obscene
> gesture towards them with both hands.  When he did so,
> deputies noticed that appellant had a pistol tucked
> into the waistband of his pants.  They ordered
> appellant to put the weapon down.  Appellant instead
> removed the pistol from his waistband and pointed it at
> the deputies while continuing to walk toward them.
> During the encounter, appellant pointed the pistol at
> each of the deputies.  Ignoring repeated demands from
> deputies to drop the pistol, appellant turned around
> and began walking back toward the house.  The deputies
> followed behind appellant and were able to overtake him
> just before he reached the house.  Deputies tackled
> appellant, wrestled the pistol away from him, and
> placed him under arrest for aggravated assault.

Appellant was transported to Lake Granbury Medical Center, where he was evaluated before being taken to jail.

Appellant was indicted on six counts of aggravated assault on a public servant. Before trial, he filed a Notice of Intent to Raise Insanity Defense requesting that the trial court appoint a disinterested mental health expert to evaluate him. The trial court granted the motion and appointed Dr. Barry Norman to examine appellant. Dr. Norman concluded from his examination of appellant that he "DID NOT have a mental infirmity . . . that caused him to lose his ability to understand or reason accurately at the time of the crime" and that appellant "did know that his behavior with which he is charged was wrong."

Appellant also filed a motion requesting a court-appointed expert to aid in the preparation of his insanity defense. The trial court denied that motion.

At trial, the jury convicted appellant of all six counts of aggravated assault on a public servant, and the trial court sentenced appellant to twenty years' confinement on each count, to be served concurrently.

Mem. Op. 2-3, ECF No. 14-4.

The appellate court affirmed the trial court's judgments. *Id.* at 16. Petitioner did not file a petition for discretionary review in the Texas Court of Criminal Appeals, however he filed two state-habeas applications challenging his convictions. Elec. R., ECF No. 14-1. The first application was denied by the Texas Court of Criminal Appeals without written order, and the second was dismissed as a successive petition. SH1 "Action Taken," ECF No. 17-1; SH2 "Action Taken," ECF No. 17-6

## II.   Issues

Generally, petitioner seeks habeas relief based on the following grounds:

(1)   He is actually innocent;

(2)   The sheriff's deputies failed to follow legislative directives;

(3)   The sheriff's deputies engaged in an illegal search and seizure;

(4)   The prosecution withheld exculpatory evidence;

(5)   The prosecution used perjured testimony;

(6)   The prosecution engaged in improper voir dire;

(7)   The prosecution delayed a speedy trial;

(8)   The trial court abused its discretion by refusing to adjourn for the day so the defense could call Dr. Smith, a material witness; and

(9)   He received ineffective assistance of trial counsel.

Pet. 6-7 & Insert, ECF No. 1.

## III.   Rule 5 Statement

Respondent believes that petitioner's claims (1), (3), (4), and (9), in part, enumerated above, are unexhausted and procedurally barred.  Respondent does not believe that the petition is untimely or successive.  Resp't's Answer 2, 11-15, ECF No. 19.

4

## IV.   Procedural Bar

Applicants seeking habeas corpus relief under § 2254 are required to exhaust all claims in state court before requesting federal collateral relief.   28 U.S.C. § 2254(b)(1); *Fisher v. Texas*, 169 F.3d 295, 302 (5th Cir. 1999).   The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest court of the state on direct appeal or in state post-conviction proceedings. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-48 (1999); *Fisher*, 169 F.3d at 302; *Carter v. Estelle*, 677 F.2d 427, 443 (5th Cir. 1982).   The exhaustion requirement is "not satisfied if the petitioner presents new legal theories or factual claims in his federal habeas petition."   *Reed v. Stephens,* 739 F.3d 753, 780 (5th Cir. 2014) (quoting *Anderson v. Johnson,* 338 F.3d 382, 386 (5th Cir. 2003)).

In Texas, the highest state court for criminal matters is the Texas Court of Criminal Appeals.   *Richardson v. Procunier*, 762 F.2d 429, 431-32 (5th Cir. 1985).   Therefore, a Texas prisoner may typically satisfy the exhaustion requirement by presenting both the factual and legal substance of a claim to the Texas Court of Criminal Appeals in either a petition for discretionary review or, as in this case, a state habeas post-

conviction proceeding.  *See* TEX. CODE CRIM. PROC. ANN. art. 11.07

(West 2015); *Depuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988).

Petitioner did not file a petition for discretionary review;

thus it was necessary that he raise his claims in a properly-

filed state-habeas application under article 11.07 of the Texas

Code of Criminal Procedure.  Petitioner raised a claim in his

first properly-filed state-habeas application that sufficiently

corresponds to his ground (4), however respondent correctly notes

that petitioner did not raise claims that sufficiently correspond

to grounds (1), (3) and (9), to the extent petitioner claims

counsel was ineffective by failing to move for a mistrial.

Petitioner's ground (1) raised for the first time in his second

state-habeas application, which was dismissed as a successive

application, as well as his grounds (3) and (9), in part, raised

for the first time in this federal petition are unexhausted for

purposes § 2254(b)(1)(A).

Under the Texas abuse-of-the-writ doctrine, however,

petitioner cannot now return to state court for purposes of

exhausting the claims.  TEX. CODE CRIM. PROC. ANN. art. 11.07, §

4(a)-(c).  The abuse-of-the-writ doctrine represents an adequate

state procedural bar to federal habeas review.  *See Nobles v.

Johnson*, 127 F.3d 409, 423 (5th Cir. 1997).  Therefore, absent a

showing of cause and prejudice or a miscarriage of justice, such showing not having been demonstrated, petitioner's grounds (1), (3) and (9), to the extent petitioner claims counsel was ineffective by failing to move for a mistrial, are unexhausted and procedurally barred from this Court's review.[1]  *See Smith v. Johnson*, 216 F.3d 521, 523-24 (5th Cir. 2000).

## V.  Discussion

### *Legal Standard for Granting Habeas Corpus Relief*

A § 2254 habeas petition is governed by the heightened standard of review provided for by the Anti-Terrorism and Effective Death Penalty Act (AEDPA).  Under the Act, a writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established Supreme Court precedent or that is based on an unreasonable determination of the facts in light of the record before the state court.  *Harrington v. Richter,* 562 U.S. 86, 99-100 (2011); 28 U.S.C. § 2254(d)(1)-(2).  This standard is difficult to meet and "stops short of imposing a complete bar on

---

[1]The Court is aware that, if proved, actual innocence may overcome a procedural bar.  However, petitioner has not made a colorable showing that he is actually innocent in light of "new evidence." *McQuiggin v. Perkins,* — U.S. —, 133 S. Ct. 1924, 1931-35 (2013).  Nor has the Supreme Court resolved the issue of whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence.  *Herrera v. Collins,* 506 U.S. 390, 401-05 (1993).

federal court relitigation of claims already rejected in state proceedings." *Harrington*, 562 U.S. at 102.

The statute further requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The presumption of correctness applies to both express and implied factual findings. *Young v. Dretke,* 356 F.3d 616, 629 (5th Cir. 2004); *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001). Absent express findings, a federal court may imply fact findings consistent with the state court's disposition. *Townsend v. Sain*, 372 U.S. 293, 314 (1963); *Pondexter v. Dretke,* 346 F.3d 142, 148 (5th Cir. 2003); *Catalan v. Cockrell,* 315 F.3d 491, 493 n.3 (5th Cir. 2002). Further, when the Texas Court of Criminal Appeals denies a federal claim in a state habeas corpus application without written opinion, a federal court may presume "that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Johnson v. Williams*, — U.S. —, 133 S. Ct. 1088, 1094 (2013); *Harrington,* 562 U.S. at 99.

### (2) Failure of Sheriff's Deputies to Follow or Adhere to Legislative Directives

Under petitioner's second ground, he asserts the deputies failed to comply with § 573.001 of the Texas Health and Safety Code by not immediately taking him to a mental health facility. TEX. HEALTH & SAFETY CODE ANN. § 573.001 (West Supp. 2014). A violation of state law however provides "no basis for federal habeas relief." *Estelle v. McGuire,* 502 U.S. 62, 68 n.2 (1991).

### (4)-(7) Prosecutorial Misconduct

Under petitioner's fourth through seventh grounds, he asserts the prosecution engaged in prosecutorial misconduct by: withholding evidence; using perjured testimony; tainting the jury pool during voir dire; and delaying his trial to hamper his defense and gain a tactical advantage. Pet. 6-7 & Inserts, ECF No. 1.

Petitioner claims the state withheld the "dashcam" video from Sergeant Ellis's patrol car, which would have exonerated him, and only gave the defense notice of its existence at the last minute. Pet. 7, ECF No. 1. *Brady v. Maryland,* 373 U.S. 83 (1963). This Court is aware that the Tarrant County District Attorney's Office maintains an open-file policy. Moreover, the prosecution introduced the "dashcam" videos of both Sergeant

9

Ellis and Deputy Mead into evidence and tendered them to the jury without objection.  RR, vol. 3, 33 & 88; ECF No. 15-3.  This suggests to the Court that the defense was aware of the dashcam videos at the latest on the day petitioner's trial commenced and was able to cross-examine the officers regarding the videos. Pet. 7, ECF No. 1.  No prejudice occurs if evidence is disclosed in time for its "effective use at trial."  *United States v. McKinney,* 758 F.2d 1036, 1050 (5th Cir. 1985).

Petitioner claims the prosecution knowingly used perjured testimony of the law enforcement officers, when it had "in its custody the dashcam video," but used "a satillite photo of petitioners property marked as to the alledged positions of petitioner and deputies, knowing that this was false."  Pet. Insert., ECF No. 1 (all misspellings and grammatical errors are in the original).  This claim is frivolous.  It was the jury's role to evaluate the credibility of the witnesses and weigh any conflicting evidence.  *United States v. Grant,* 683 F.3d 639, 642 (5th Cir. 2012).  As noted above, two "dashcam" videos were admitted at trial; thus, it was for the jury to decide whether the videos corroborated or contradicted the officers' testimony regarding petitioner's and the officers' relative positions as the events occurred.

Petitioner claims the prosecution improperly examined a veniremember, a police captain, during voir dire.   In his state habeas application, Petitioner asserted—

> During voir dire the prosecutor asked veniremember Captain Allen Hines of the Granbury City Police Department as to his feelings and that of other police officers with hypothetical that mirrored the actual case before jury was selected and evidence presented at trial.  Although proper to use hypothetical questions to explain application of law or to explain concepts of law.  The prosecution attempted to seek or search the results of the case in advance or ask questions that are calculated to harm the defence or to commit venneir members to a verdict thus tainting the entire jury pool deining appellant the right to a fair and impartial jury and trial.

SH01, 13, ECF No. 17-1 (all misspellings and grammatical errors are in the original).

Under Texas law, it is proper during voir dire to pose hypothetical fact situations to determine prospective jurors' view of issues particular to the case being tried.   *Green v. Johnson,* 160 F.3d 1029, 1037 n.4 (5th Cir. 1998).  In application, this means that "[a] proper [voir dire] question is one which seeks to discover a veniremember's views on an issue applicable to the case."  *Rhoades v. Texas,* 934 S.W.2d 113, 122 (Tex. Crim. App. 1996).  The prosecutor may not, however, go beyond hypotheticals and attempt to commit an individual prospective

11

juror to a particular course of action based upon a certain factual situation. *Cuevas v. State,* 742 S.W.2d 331, 343 (Tex. Crim. App. 1987); *see also Lee v. State,* 176 S.W.3d 452, 461-62 (Tex. App.-Houston [1st Dist.] 2004) (holding that hypothetical was not overbroad when it "did not contain additional facts specific to the case at bar that [were] unnecessary to explain the application of the law"). Here, the prosecutor discussed the concepts of finding a defendant guilty based on a threat alone, the use of a gun relevant to the ability to carry out the threat, voluntary intoxication, a defendant's threat to commit suicide, and an insanity defense. RR, vol. 2, 41-61, ECF No. 15-2. Thus, the state's hypothetical and questions all served the purpose of illustrating principles of law that were applicable to petitioner's case and tested the veniremembers' potential bias and ability to apply those principles. *See Delacerda v. State,* 425 S.W.3d 367, 382 (Tex. App.-Houston [1st Dist.] 2011, pet. ref'd). This Court may assume then that the state courts found the hypothetical proper. Absent a showing that this determination is contrary to, or an unreasonable application of clearly established Supreme Court law on the issue or clear and convincing evidence that the hypothetical examples rendered his trial fundamentally unfair by denying him an impartial jury, we

defer to the state courts' adjudication of the claim.  *See Clark v. Blackburn,* 605 F.2d 163, 164 (5th Cir. 1979).

Finally, under his seventh ground, petitioner claims the prosecution delayed his trial for nine months to hamper his defense and gain an advantage by failing to contact "Dr. Norman, the court appointed disinterested expert witness, within the 30 day time limit" required by the Texas Code of Criminal Procedure. Pet. Insert., ECF No. 1.  The record reflects that on December 7, 2010, the trial court appointed Dr. Norman as a disinterested-expert and ordered Dr. Norman to conduct a "concurrent" examination of petitioner for both competency and sanity and submit his report within 30 days as provided by statute.  SH01, 37-39, ECF No. 17-1.  TEX. CODE CRIM. PROC. ANN. arts. 46C.103 & 46C.105 (West 2006).  Dr. Norman evaluated petitioner on July 15 and August 19, 2011, and submitted his report on August 29, 2011, which was received by the trial court on September 1, 2011. Supp. Clerk's R. 11, ECF No. 14-5.  As previously noted, a violation of state law provides "no basis for federal habeas relief."  *Estelle,* 502 U.S. at 68 n.2.  Nor does petitioner raise a tenable federal constitutional claim under the Sixth Amendment. Such a claim is evaluated under the four-part balancing test set forth in *Barker v. Wingo,* 407 U.S. 514 (1972), under which a

court must take into consideration the "[l]ength of delay, the
reason for the delay, the defendant's assertion of his right,
[and] prejudice to the defendant." *Id.* at 530.   Petitioner
wholly fails to address these factors.   Moreover, the delay in
this case—less than a year—would not provoke an inquiry into the
*Barker v. Wingo* factors.   *Id.* at 530.

### (8) *Abuse of Discretion*

Under his eighth ground, petitioner claims the trial court
abused its discretion by refusing to adjourn the case for a day
so the defense could call a material witness, Dr. Smith, to
assist in establishing an insanity defense.   Pet., Insert, ECF
No. 1.   The record reflects that on July 1, 2011, defense counsel
filed a motion for appointment of an independent psychiatric
expert to assist in petitioner's defense.   Clerk's R. 19, ECF No.
14-6.   On September 26, 2011, prior to announcing ready for
trial, defense counsel, relying on *Ake v. Oklahoma,* 470 U.S. 68
(1985), requested a ruling on the motion and a continuance of a
day and a half for the purpose of obtaining expert assistance.
RR, vol. 2, 4-6, ECF No. 15-2.   The trial court denied the
motion.   *Id.* at 6.   In *Ake,* the Supreme Court held that due
process requires the state to provide an indigent defendant funds
for psychiatric assistance when he makes a preliminary showing

14

that his mental state was a significant factor at the time of the offense.   470 U.S. at 83.   The state appellate court, citing to *Ake* and relevant state law, addressed the claim as follows:

> Appellant . . . argues that the trial court erred in denying his motion to appoint a mental health expert to aid him in presenting his insanity defense. Appellant claims that he properly demonstrated that his sanity was likely to be a significant factor at trial and thus he had a due process right to have a court-appointed expert examine him and testify on his behalf. Appellant contends that the trial court's failure to provide an expert denied him his due process rights.

> Due process requires access to the raw materials integral to the building of an effective defense-including the appointment of an expert for indigent defendants.  But in implementing the right to receive an expert, the defendant has the burden to make a sufficient threshold showing of the need for expert assistance.  To carry his burden when requesting expert assistance on the issue of sanity, the defendant must show that sanity is likely to be a significant factor at trial.  The defendant's claim must be based on more than undeveloped assertions that expert assistance would be beneficial.  Generally, the trial court looks for the defendant to support his motion for an expert with affidavits or other evidence showing his need for expert assistance, as well as an explanation of the defensive theory and why the expert assistance would be helpful in establishing that theory.  When the court appoints a disinterested expert to examine the defendant to determine whether sanity will be a significant factor at trial and that expert determines that sanity will not be a significant factor, then the right to an appointed expert is not triggered.  We review a trial court's ruling on a motion to obtain a court-appointed expert under an abuse of discretion standard.

> In this case, the trial court appointed a

disinterested expert, Dr. Norman, to evaluate
appellant.  Dr. Norman examined appellant and submitted
his report to the trial court.  In his report, Dr.
Norman discussed appellant's medical and psychological
history, as well as his mental state at the time of the
examination, and concluded that appellant was not
criminally insane.  Dr. Norman noted that appellant was
likely under the influence of drugs and alcohol at the
time of the offense but also stated that voluntary
intoxication cannot be a basis for criminal insanity.
The doctor also noted that although appellant may have
been suffering from depression at the time of the
offense, he was functioning normally, had the capacity
to understand what he was doing, and knew that his
behavior was wrong.

In appellant's Motion for Appointment of Expert
Assistance, he argued that he was entitled to an expert
other than Dr. Norman to assist in presenting his
insanity defense.  Appellant stated in his motion that
"[i]t is believed that all actions which substantiate
the charge were the result of a psychotic episode or
some other mental aberration which rendered [him]
insane."  Appellant argued that the appointment of an
expert for the defense was both "necessary" and
"critical" to the preparation of his defense.
Appellant did not support his motion with any
affidavits, testimony, or exhibits.

Because the disinterested expert concluded that
appellant's sanity at the time of the offense would not
be a significant factor and because appellant brought
forward no evidence other than conclusory assertions in
support of his motion, the trial court could have
reasonably found that appellant did not carry his
burden in showing that his sanity would be a
significant factor at trial.  Therefore, we hold that
the trial court did not abuse its discretion in denying
appellant's motion for an appointed expert.

Mem. Op. 10-13, ECF No. 14-4.

*Ake* does not clearly provide a constitutional right to an

"independent" psychiatrist. *Woodward v. Epps*, 580 F.3d 318, 332

n.5 (5th Cir. 2009), *cert. denied*, 559 U.S. 1071 (2010), and the

Supreme Court has denied certiorari in a case regarding whether

Texas's provision of a "disinterested" expert satisfies *Ake*.

*Granviel v. Texas*, 495 U.S. 963 (1990). Given the lack of a

clear Supreme Court holding that a defendant is entitled to

independent psychiatric assistance, the decision of the state

court in rejecting this claim is not "contrary to" or an

"unreasonable application of" clearly established federal law.

*Lopez v. Smith*, 135 S. Ct. 1, 4-5 (2014) (holding the AEDPA

prohibits the federal courts of appeals from relying on their own

precedent to conclude a particular constitutional principle is

"clearly established"); *Williams v. Taylor*, 529 U.S. 362, 381

(2000) (relief precluded if the Supreme Court has not "broken

sufficient legal ground" on a constitutional principle advanced

by a petitioner).

### *(9) Ineffective Assistance of Counsel*

Under his ninth ground, petitioner claims he received

ineffective assistance of trial counsel. A criminal defendant

has a constitutional right to the effective assistance of counsel

at trial. U.S. Const. amend. VI, XIV; *Evitts v. Lucey*, 469 U.S.

387, 393-95 (1985); *Strickland v. Washington*, 466 U.S. 668, 688

17

(1984).   An ineffective assistance claim is governed by the

familiar standard set forth in *Strickland v. Washington.*   466

U.S. at 668.   To establish ineffective assistance of counsel a

petitioner must show (1) that counsel's performance fell below an

objective standard of reasonableness, and (2) that but for

counsel's deficient performance the result of the proceeding

would have been different.   *Strickland*, 466 U.S. at 688.

*Strickland* allows the habeas court to look at either prong first;

if either one is found dispositive, it is not necessary to

address the other.   *Id.* at 697; *Murray v. Maggio,* 736 F.2d 279,

282 (5th Cir. 1984).

In this case, no express findings of fact or conclusions of

law were made by the state courts regarding petitioner's

ineffective-assistance claims.   The state habeas judge, who also

presided over petitioner's trial, merely recommended denial of

petitioner's state application after finding there were "no

controverted, previously unresolved issues of fact material to

the legality of the Petitioner's conviction[s]."   SH1-Writ 25,

ECF No. 17-1.   The recommendation was followed by the Texas Court

of Criminal Appeals, which denied relief without hearing or

written order.

In the absence of a written opinion or express findings of

fact, this court assumes the state courts applied the *Strickland*

standard and made factual findings consistent with the state

courts' decision.   The Supreme Court recently emphasized in

*Harrington v. Richter* the way that a federal court is to consider

an ineffective assistance of counsel claim raised in a habeas

petition subject to AEDPA's strictures:

> The pivotal question is whether the state court's
> application of the *Strickland* standard was
> unreasonable.   This is different from asking whether
> defense counsel's performance fell below *Strickland's*
> standard.   Were that the inquiry, the analysis would be
> no different than if, for example, this Court were
> adjudicating a *Strickland* claim on direct review of a
> criminal conviction in a United States district court.
> Under AEDPA, though, it is a necessary premise that the
> two questions are different.   For purposes of §
> 2254(d)(1), "an *unreasonable* application of federal law
> is different from an *incorrect* application of federal
> law."   A state court must be granted a deference and
> latitude that are not in operation when the case
> involves review under the *Strickland* standard itself.

562 U.S. at 101 (quoting *Williams v. Taylor,* 529 U.S. 362, 410

(2000)) (emphasis in original).   Accordingly, it is necessary

only to determine whether the state courts' rejection of

petitioner's ineffective-assistance claims was contrary to or an

objectively unreasonable application of *Strickland. Bell v.*

*Cone,* 535 U.S. 685, 698-99 (2002); *Kittelson v. Dretke,* 426 F.3d

306, 315-17 (5th Cir. 2005); *Schaetzle v. Cockrell,* 343 F.3d 440,

443 (5th Cir. 2003).

Petitioner claims his trial attorney was ineffective because he-

(a)   failed to "investigate if a dashcam was recorded and failed to view it";

(b)   failed to object during voir dire;

(c)   failed "to sustain the plea [and] abandoned the plea by failure to call material witnesses"; and

(d)   failed to "understand how to obtain expert witness for the defence by simple affidavit or records supporting need for such expert."

Pet. Insert, ECF No. 1 (all misspellings and grammatical errors are in the original).

Having reviewed the record in its entirety, and assuming the state courts concluded that petitioner failed to demonstrate one or both prongs of the *Strickland* standard, it is not necessary for this court to apply the first prong.   In light of the overwhelming evidence of petitioner's guilt, he cannot establish prejudice against him.   *Green v. Lynaugh,* 868 F.2d 176, 177 (5th Cir. 1989).   Absent prejudice, petitioner's claims fail the second *Strickland* prong.   *United States v. Royal,* 972 F.2d 643, 651 (5th Cir. 1992).

### *Summary*

In summary, petitioner's grounds (1), (3), and (9), to the extent petitioner claims counsel was ineffective by failing to

20

move for a mistrial, are unexhausted and procedurally barred.
The state courts' adjudication of petitioner's remaining claims
is not contrary to or involve an unreasonable application of
clearly established federal law, as determined by the Supreme
Court, in light of the record as a whole.  Accordingly, it is
entitled to deference and the presumption of correctness.

For the reasons discussed herein,

The Court ORDERS the petition of petitioner for a writ of
habeas corpus pursuant to 28 U.S.C. § 2254 be, and is hereby,
denied.  The Court further ORDERS that a certificate of
appealability be, and is hereby, denied.

SIGNED August __2 6__, 2015.

_____
JOHN McBRYDE
UNITED STATES DISTRICT JUDGE